[Civ. No. 15109. First Dist., Div. One. Mar. 27, 1952.]

COMMERCIAL CASUALTY INSURANCE COMPANY OF NEWARK, NEW JERSEY, et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and JOHN T. PORTER, Respondents.

84

Henry C. Sanford for Petitioners.

Tipton, Weingand & Tipton and Herlihy & Herlihy, as Amici Curiae on behalf of Petitioners.

Edmund G. Thomas, Jr., and T. Groezinger for Respondents.

BRAY, J.—Petition by the employer and its insurance carriers to review an award of the Industrial Accident Commission to John T. Porter, employee.

## Questions Presented

The main question presented is whether the Industrial Accident Commission had jurisdiction to handle this claim, which question, in turn, depends upon the solution of the first four of the following questions: 1. Does the evidence establish that a contract of hire was made in California? 2. Does section 5305 of the Labor Code apply where the non-resident is not physically in California at the time of contracting? 3. Did claimant submit to the commission's jurisdiction? 4. Is the economic welfare of the state endangered? 5. Is the period of disability correct?

## Facts

There is practically no dispute concerning the facts of the employment. The controversy is over their legal effect, as the commission found that the contract of hiring was entered into in San Francisco. Porter is a resident of Atlanta, Georgia. At no time was he physically present in California. There are two corporations concerned with his employment, Bechtel International Corporation, hereafter referred to as San Francisco Bechtel, and International Bechtel, Inc., hereafter referred to as International. These two had entered into a written agreement under which San Francisco Bechtel was to engage persons in the United States to work for International in the Near or Middle East. In a local paper in Atlanta, Porter read an advertisement for construction workers for overseas work. In June, 1948, he went to the Atlanta representative of San Francisco Bechtel who gave him an employment application to fill out. This was directed to San Francisco Bechtel. Porter completed and delivered it to the representative in Atlanta, who forwarded it to San Francisco. Four days later he had a wire from San Francisco Bechtel stating terms and asking him to wire availability for assignment as carpenter, Persian Gulf area. Porter wired it that he was immediately available. Shortly thereafter he received from San Francisco Bechtel by mail certain "processing documents" including lengthy instructions and printed forms of a Memorandum of Agreement. This document is directed to San Francisco Bechtel, and states, among other things: "You have entered into a written agreement with International Bechtel, Inc., which latter Company is hereinafter referred to as the 'Contractor,' to engage persons in the United States of America who will render service for the Contractor on construction or other

work in Saudi Arabia or other locations in the Near and Middle East.

"I understand that in signing below *I am offering to enter into an Employment Agreement with the Contractor* to perform services in Saudi Arabia or other locations in the Near or Middle East in accordance with the terms and conditions set forth in the attached form of Employment Agreement.

". . . I offer to proceed to Saudi Arabia or other locations in the Near or Middle East at the salary and/or other compensation, and upon the terms and conditions set forth in the *attached Employment Agreement,* said salary or other compensation hereunder to commence on the date stated in your acceptance of this offer. Your acceptance to this offer assures me that when I arrive in Saudi Arabia or other designated locality in the Near or Middle East, the attached Employment Agreement will be duly executed by the Contractor and I likewise hereby agree then to execute the attached Employment Agreement and undertake performance thereof. . . .

"I understand that upon this Memorandum of Agreement being signed by me and in writing accepted by you at San Francisco, California, it shall become a binding State of California, United States of America Agreement and that the Workmen's Compensation Insurance provisions of the California Labor Code shall constitute the exclusive remedy for any injury or illness (as defined in Section 7 of the Employment Agreement) that I may sustain while this Memorandum of Agreement is in force and effect.

"Your obligations under this Memorandum of Agreement shall continue only until the Contractor shall commence performance of said Employment Agreement, it being understood that your obligations under this Memorandum of Agreement and Contractor's obligations under said Employment Agreement shall be supplementary one to the other, and not cumulative.

"I understand that this Memorandum of Agreement is not, nor is it intended to be, a commitment to hire; but, on the contrary, it is intended and is to be considered an offer on my part to qualify and be prepared to accept employment if and when the said Contractor requests my services. This Agreement shall not become effective until it is accepted by you and salary shall not commence until the date inserted in said acceptance." (Italics added.)

Although the Memorandum of Agreement states that there

is attached the "Employment Agreement" with International, it was not attached at the time Porter signed it nor when it was returned to him by San Francisco Bechtel as hereafter set forth. However, a copy of the Employment Agreement, marked "Information Copy," was included with the Memorandum Agreement and the other papers sent Porter. Porter then, in accordance with the instructions, signed in duplicate the Memorandum of Agreement, and forwarded it to San Francisco Bechtel at San Francisco. In a few days he received back one copy. The Memorandum of Agreement was signed by San Francisco Bechtel underneath the portion which reads: "The services of the applicant whose signature appears above are hereby accepted pursuant to the terms and conditions above set forth and it is agreed that the salary shall commence on the 16th day of August, 1948; it is further agreed that subsistence per diem shall commence on the 19th day of August, 1948. Dated August 19, 1948, At San Francisco, California." There then was another place for Porter to sign, which read: "Read and Accepted"— "Signature of Employee." Porter signed this. Porter obtained the necessary physical examination and inoculations, signed an application for visa, and followed the instructions given him. This took approximately two months, the required documents being mailed to San Francisco Bechtel at different times. Porter in Atlanta received a wire from San Francisco Bechtel telling him he was scheduled to leave New York on August 19th. Further travel instructions were sent him, and pursuant to them he went to New York. There he signed a "Memorandum of Agreement" identical with the one he signed in Atlanta, but attached to it was the "Employment Agreement" which he also signed. The Memorandum of Agreement had been signed and the dates for commencement of salary typed in in San Francisco by San Francisco Bechtel and sent to New York. This Employment Agreement sets forth that the contractor (International) employs Porter and the employee (Porter) accepts employment by the contractor on the terms and conditions therein set forth to which the parties agree. Then follows a lengthy statement of the conditions of work, salary and other pay, compensation for disability or death (compensation insurance benefits to be paid as provided in the California Workmen's Compensation Act, which benefits shall be the sole remedy for any injury or illness arising out of and in the course of the employment), jobside facilities and many other

matters. It also states: ''Supplementary Agreement. The Employee has heretofore entered into a Memorandum of Agreement with Bechtel International Corporation which refers to this Employment Agreement and is supplementary hereto rather than cumulative.'' Porter took the Memorandum of Agreement with the attached Employment Agreement with him to Arabia where at the jobsite the latter was signed by International.

1. *Was the Contract Entered Into in California?*

■ The evidence supports the finding that it was. San Francisco Bechtel was employed by International to engage persons to work for International. It sent the Memorandum of Agreement to Porter. Although not attached to the memorandum, the latter was accompanied by an ''Information Copy'' of the Employment Agreement with International which Porter agreed to sign when he got to Arabia and San Francisco Bechtel agreed that International would also then sign. This Employment Agreement contained all of the terms of the proposed employment. The memorandum expressly provides that it is an offer by Porter to accept employment on the terms and conditions set forth in the Employment Agreement if and when the contractor requests his services. This offer was accepted *in San Francisco* by San Francisco Bechtel, the International's agent, when it signed the paragraph below Porter's signature: ''The services of the applicant whose signature appears above are hereby accepted . . . and it is agreed that the salary shall commence,'' etc. Applicable here is the old rule of offer and acceptance. The offer contains all the terms of the proposed employment by reference to the Employment Agreement, which, although not attached, copies were in the hands of both parties. See *Twining* v. *Thompson,* 68 Cal.App.2d 104, 110 [156 P.2d 29], where it was held that when a number of writings dovetail so as to show a meeting of the minds, the contract is as well established as though it had been included in one writing. The offer and the terms were definite and certain. They were accepted by International's duly authorized agent and the contract then was complete. On its return to Atlanta Porter signed ''Read and Accepted''—''Signature of Employee.'' This fact does not change the situation as the employer's acceptance at San Francisco was not conditional on Porter's again signing. This signature merely confirmed Porter's

understanding of the date fixed for the commencement of his salary, even though it was contemplated that the formal Employment Agreement was to be later executed in Arabia. ''This Agreement shall not become effective until it is accepted by you and salary shall not commence until the date inserted in said acceptance,'' is merely the converse of stating that on its acceptance it becomes effective and the salary commences from the date set forth. It was accepted in California.

Section 5305 of the Labor Code provides that the commission has ''jurisdiction over all controversies arising out of injuries suffered without the territorial limits of this State in those cases where the injured employee is a resident of this State at the time of the injury and the contract of hire was made in this State.'' This was originally section 58 of the Workmen's Compensation Act and the requirement that the injured employee be a resident of this state was held unconstitutional in *Quong Ham Wah Co.* v. *Industrial Acc. Com.*, 184 Cal. 26 [192 P. 1021, 12 A.L.R. 1190]. In *Benguet Consol. Min. Co.* v. *Industrial Acc. Com.*, 36 Cal.App.2d 158 [97 P.2d 267], it was held that section 5305 extended the benefits of the act to nonresidents *if* the contract of employment was made in this state.

A persuasive case on this subject is *International Bechtel, Inc.* v. *Industrial Acc. Com., William J. Cushing,* 14 Cal. Comp. Cases, 150, in which this court denied a petition for writ of review. The circumstances of the employment were similar to those in our case except that after the preliminaries had been carried on in Oregon, the employee came to San Francisco where he signed the Memorandum of Agreement. It was then signed by San Francisco Bechtel. He then went to his home in Minnesota, where he received word to go to New York, and receive transportation to Saudi Arabia. On his arrival in Arabia he signed the Employment Agreement. The significant part of the decision lies in the interpretation of the Memorandum of Agreement, identical with the one here. It held that it constituted (as its very wording states) an offer to accept employment and that its execution by San Francisco Bechtel completed the acceptance of the offer in San Francisco, created the contract between the parties, and that what took place later was immaterial. While the employee there was physically present in California at the signing of the memorandum, that fact makes no difference, for it is the acceptance of the employee's offer which counts and

that acceptance may be effective either by a delivery of the acceptance in person, as in the Cushing case, or by mailing, as in our case. In *Globe Cotton Oil Mills* v. *Industrial Acc. Com.*, 64 Cal.App. 307 [221 P. 658], the employer was engaged in construction work in Mexico. At Calexico, California, a workman asked the employer's superintendent for a job. The superintendent said he would see about it. Later he told the workman he could go to work. The court held that the workman's offer was then accepted. "A contract is made at the place where the offer is accepted. [Citations.] The place of the contract is the place at which the last act was done by either of the parties essential to a meeting of the minds." (Pp. 309-310.) In our case the minds of the parties met when San Francisco Bechtel on behalf of International accepted Porter's offer. The terms were definite and there was nothing further to be determined between the parties. Section 1583 of the Civil Code provides: "Consent is deemed to be fully communicated between the parties as soon as the party accepting a proposal has put his acceptance in the course of transmission to the proposer . . ."

Petitioners' contention that the Memorandum of Agreement is merely an expression of willingness to accept employment when offered at the jobsite, overlooks the plain intendment of the instrument, and particularly the clause which provides, in effect, that when the offer is accepted his salary shall commence as of the date inserted in the acceptance, and the clause in the Employment Agreement headed "Supplementary Agreement," which states that the Memorandum Agreement is supplementary to it and not cumulative. See *Gavina* v. *Smith*, 25 Cal.2d 501, 504 [154 P.2d 681], which held, in effect, that where parties have agreed in writing upon the essential terms of a contract, there is a binding contract even though a formal one is to be prepared and signed later. See also *Gibson* v. *De La Salle Institute*, 66 Cal.App.2d 609 [152 P.2d 774].

Petitioners cite *Texas Employers' Ins. Assn.* v. *Hoehn*, (Tex.Civ.App.) 72 S.W.2d 341, for the proposition that the contract between the parties was not complete until the Memorandum of Agreement was signed in Arabia. But the case does not support it. There the employer had formerly employed the employee at a fixed union rate of pay. While in Arizona, the employee wrote to the employer at San Francisco asking for a job on a new El Paso, Texas, project the

latter was about to commence, and asked that, if the employer could use him, to send him a card or letter stating when the job would start. The employer answered, stating that the job would soon start and he would drop the employee a line when he needed him. Shortly thereafter the employer went to El Paso, and while there wrote to the employee at Phoenix that the job was ready and to come. In the letter he included a railroad ticket from Phoenix to El Paso. The employee went to El Paso and started to work at his usual job and pay. He was killed in the course of his employment, and his next of kin applied to the Texas Industrial Accident Board for compensation. From such award the employer's insurance carrier appealed, contending that the contract of hiring did not take place in Texas, but in Arizona, when the letter containing the railroad ticket and notifying the employee to come to Texas was received by the employee. The respondents contended that the employer did not accept the employee's offer to take a job until he sent the letter and ticket which constituted an acceptance of the employee's continuing offer and thereby the contract was completed in Texas. The court refused to adopt either theory. It stated that the contract was complete when the employer in San Francisco deposited his letter in the mail stating that he would let the employee know when he needed him. The employee had advised that if his services were desired the employer should advise him and the employer's letter constituted an acceptance of his offer. This completed the contract in California. The court, although the case was decided on this theory, did go on to state that if these letters were considered as merely negotiations, then when the employer sent the letter and ticket, such act was not the acceptance of any offer of the employee, but was an offer by the employer which was not accepted until the employee received it and then accepted it by boarding the train at Phoenix, at which place the contract was completed. The only purpose of the court in discussing this second theory was to show that in no event could the contract be considered to have been made in Texas. The actual decision of the court was that it was made in California. This second theory is not applicable to our case for the reason that we have an absolute acceptance in San Francisco, and therefore, the theory upon which the Texas case was decided applies.

While it is true that jurisdiction cannot be conferred on the commission merely by agreement of the parties, never-

theless, in determining where the contract was entered into, their interpretation of their own acts and intentions as to the place of making the contract is of some significance.

■ Thus, the clause in the Employment Agreement to the effect that compensation insurance benefits, in case of injury or illness, shall be paid *as provided* in the California Workmen's Compensation Insurance Act, as the sole remedy, can be considered in determining whether the acceptance of the Memorandum of Agreement in California was intended to constitute the contract of hiring. The parties are presumed to know that they could not confer jurisdiction on the commission if the contract were not made here. Therefore, it is reasonable to conclude that it was their intention to complete the contract in California so that that clause would be effective in California. While such interpretation is not conclusive of the question, it is a matter to be considered.

## 2. *Employee Not Physically Present in California*

It is contended that because the Legislature in codifying the Labor Code, reenacted the exact language of section 58 of the Workmen's Compensation Act into section 5305 of the Labor Code, after the court in the Quong Ham Wah case, *supra,* had held to be unconstitutional the requirement that the injured employee must be a resident of California, establishes that the Legislature never intended that the commission would have jurisdiction over an out-of-state employee and accident unless the contract was made in this state *with the employee physically present at its making.* That this contention is without merit is shown by section 2 of the Labor Code: "The provisions of this code, in so far as they are substantially the same as existing provisions relating to the same subject matter, shall be construed as restatements and continuations thereof and not as new enactments." The effect of the Quong Ham Wah decision was to leave the original act as though it were merely modified.

## 3. *Did Claimant Submit to Jurisdiction of Commission?*

■ Amici curiae raise the contention that Porter never appeared before the commission because he remained in Georgia, was represented by an attorney there, and the only evidence presented by him was at a hearing there. There is no point to this contention. Porter filed a claim with the commission, thereby submitting to its jurisdiction. A hearing was held in San Francisco as well as in Georgia. His

situation is similar to that of a plaintiff in a court proceeding who, while a nonresident of the state, files a complaint here and has his deposition taken at his home. It could not be reasonably contended that he has not submitted to the jurisdiction of the court.

### 4. *Economic Welfare Endangered?*

Amici curiae make the ingenious contention that by holding that section 5305 applies to a contract made in California but without the physical presence of the employee, the economic welfare of this state is endangered. This contention is based on the fact that under sections 4751, 4754 and 4755 of the Labor Code, an employee previously permanently partially disabled who sustains a subsequent injury compensable under the Workmen's Compensation laws, under certain circumstances may be entitled to additional payments from the state treasury, the funds of which available for this purpose are general funds raised by taxation to which, of course, a nonresident would not contribute. If these sections should apply to Porter in the future, and thereby endanger the state welfare, such a matter is for the consideration of the Legislature and not for the courts.

### 5. *Period of Disability*

The commission found that Porter's injury caused temporary total disability commencing June 15, 1949, and continuing to and including December 15, 1949. Petitioners contend that the disability had terminated on June 15, or in any event on August 17. Porter's injury, which is not disputed, consisted of a tumor or skin cancer on his nose caused by exposure in Arabia to excessive sunlight. (The temperature there ran from 118 to 132 degrees.). It started in December, 1948. Some treatment was given him there, and in June, 1949, he was returned to New York for treatment, arriving here about June 20. On August 17, Dr. Alden, who treated him, wrote to San Francisco Bechtel stating: "He is *well* of his disease, but it would be most likely that he would have a recurrence or have another such area develop if he returned to excessive exposure to sunlight. We therefore advised that he remain in this country where he could control exposure to the sun in his occupation." (Italics added.) No further medical treatment was given him. Porter testified that Dr. Alden advised him to keep out of exposure to any sunlight and therefore he was unable to work as a carpenter until

December 16. Coupling this statement with Dr. Alden's letter, there is sufficient support for the commission's finding that there was disability until December. "What the doctors told McClure also constitutes medical opinion upon which the commission could base its award." (*Bethlehem Steel Corp.* v. *Industrial Acc. Com.*, 70 Cal.App.2d 369, 378 [161 P.2d 18].) Petitioners' contention that because Porter was able to work from December, 1948, until he left Arabia June 14, 1949, shows that there could be no disability for the period thereafter, is not well founded. He was being treated from June 20 to August 17, at which time, although the doctor said he was "well of his disease," he was still cautioned not to expose himself to the sunlight, and because of that medical advice he was handicapped in his trade until December.

The award is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied April 26, 1952, and petitioners' application for a hearing by the Supreme Court was denied May 22, 1952.