[Civ. No. 19242.   Second Dist., Div. Three.   Mar. 25, 1953.]

COMMERCIAL CASUALTY INSURANCE COMPANY et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and JOSEPH R. CRAWFORD, Respondents.

Tipton, Weingand & Tipton for Petitioners.

Edmund J. Thomas, Jr., and T. Groezinger for Respondents.

WOOD (Parker), J.—Petition to review an award of the Industrial Accident Commission. Bechtel International Corporation, a corporation, whose main office is in San Francisco, California, had entered into a written agreement with International Bechtel, Inc., a corporation, to engage persons in the United States to work for International Bechtel in Saudi Arabia. The corporation first above mentioned will be referred to as Bechtel, and the other one will be referred to as International. It was stipulated at the hearing before the referee that the applicant, Joseph R. Crawford, was employed by one or both of said corporations and that both corporations were insured by the Commercial Casualty Insurance Company. The insurance company and said two corporations are petitioners herein.

Petitioners contend that the Industrial Accident Commission did not have jurisdiction to make the award. Their argument is that applicant has not been a resident of California and that the contract of employment was not made in California. Section 5305 of the Labor Code provides that the Industrial Accident Commission ''has jurisdiction over all controversies arising out of injuries suffered without the territorial limits of this State in those cases where the injured employee is a resident of this State at the time of the injury and the contract of hire was made in this State.'' The provision in said section requiring that the employee be a resident of this state has been held to be unconstitutional. (*Quong Ham Wah Co.* v. *Industrial Acc. Com.*, 184 Cal. 26, 38 [192 P. 1021, 1026-1027, 12 A.L.R. 1190] ; *Commercial Cas. Ins. Co.* v. *Industrial Acc. Com.*, 110 Cal.App.2d 83, 89 [242 P.2d 13, 17].) The question remaining with respect to jurisdiction, is whether the contract was made in California.

On November 7, 1947, the applicant, Mr. Crawford, who then resided in Oklahoma, wrote to the office of Bechtel at Houston, Texas, stating: ''I am returning application which I have completed for your consideration . . . . May I state my reason for requesting Foreign Service. . . .'' He enclosed

in that letter an application for employment which consisted of four pages of a filled-in, completed, and signed printed form of application at the top of which were the words: "Employment Application   Bechtel International Corporation." A question on said form was, "Are you available for Foreign Service?" His answer thereto was "Yes." The application also contained a detailed statement of his employment record from 1923 to the date of the application, November 7, 1947.

On December 16, 1947, Bechtel, in San Francisco, wrote a letter to Mr. Crawford stating: "Your application for assignment as a Clerk on one of our foreign projects has been forwarded to this Department. Since you are being considered for possible assignment we wish to determine whether or not you will be available at such time as a requisition for your classification may be received from the jobsite. Will you therefore kindly fill in the questions appearing below and return this letter at your earliest convenience. Upon receipt of confirmation regarding your availability, we will initiate our verification procedure. . . ." The "questions" referred to, as appearing below, were: "I am available for future assignment" and "I have certified proof of citizenship in my possession." On December 26, 1947, Mr. Crawford wrote the word "Yes" as an answer to each of those questions and affixed his signature thereto, and mailed the document to Bechtel at San Francisco.

On January 6, 1948, Bechtel, from San Francisco, sent a telegram to Mr. Crawford in Oklahoma, as follows: "Please advise collect wire within 24 hours if you are eligible and available possible assignment as section supervisor time and payroll at $500 month no overtime plus board, lodging, medical care . . .. Also advise if birth certificate or proof of citizenship in your possession."

On January 8, 1948, Mr. Crawford, from Oklahoma, sent a telegram to Bechtel at San Francisco, as follows: "Eligible and available for assignment. Birth certificate in my possession."

On January 9, 1948, Mr. Crawford, in Oklahoma, received a telegram sent by Bechtel from Houston asking him to telephone to Bechtel at Houston. He telephoned as requested and was informed by Bechtel that all processing documents had been sent from the Houston office of Bechtel to Mr. Crawford in Oklahoma. Thereafter and before January 16th,

Bechtel, at Houston, mailed to Mr. Crawford in Oklahoma a document entitled "General Instructions for Processing." Sixteen other documents were enclosed with those instructions. The instructions stated in part, at the beginning thereof: "We acknowledge receipt of notice of your availability and intent to prepare yourself to go forward to Saudi Arabia as Sec Supv Time & Payroll at $500.00 per month plus extras. We are enclosing documents which must be completed, dated, and signed. . . ." At the end of those instructions it was stated: "No DEFINITE DEPARTURE TIME WILL BE GIVEN UNTIL ALL PAPERS HAVE BEEN RECEIVED BY THE SAN FRANCISCO OFFICE."

One of the documents enclosed with the instructions was a printed blank form (Exhibit H herein) entitled "Bechtel International Corporation. Memorandum of Agreement." On January 17, 1948, Mr. Crawford, in Oklahoma, signed the memorandum of agreement and mailed it to Bechtel at San Francisco. Also on said date, he filled in the blanks on several of the other documents which were enclosed with the instructions, and he signed, and mailed those documents to Bechtel at San Francisco. Those additional documents pertained to his travel expenses, his fingerprints, his understanding that he would live in temporary quarters at the jobsite, and his possession of an Oklahoma license to drive a motor vehicle.

About February 2, 1948, he signed and mailed to Bechtel at San Francisco a form, furnished by Bechtel, wherein he directed that certain of his earnings be sent to a bank in Oklahoma.

On February 17, 1948, he signed and mailed to Bechtel at San Francisco a printed form entitled "Baggage Statement."

On February 20, 1948, Bechtel at San Francisco telegraphed him at Oklahoma as follows: "You scheduled embark New York February 27. You scheduled depart Tulsa via American Airlines Flight No. 6 at 5:40 p m February 24 arriving New York at 1:25. Ticket paid for this end. Please pickup at Tulsa AAL Office Soonest. Necessary you wire collect when ticket obtained. Upon arrival New York contact Harry Heap. . . . He will have passport, processing documents and foreign transportation. . . ."

On February 21, 1948, Mr. Crawford, from Oklahoma, telegraphed Bechtel at San Francisco: "Flight reservation ticket picked up today Depart 24th."

On February 24th, he left by airplane from Oklahoma and

arrived in New York City on February 25th. On the date of his arrival there, he contacted Mr. Coughlin, a representative in New York of Bechtel, and then signed a document entitled "Applicant's Acknowledgment." At the top of the front page of that document there were the words "Bechtel International Corporation Personnel Department . . . San Francisco 5, California." The document contained several specifications regarding his understanding as to the terms and conditions of his employment. He also signed a document entitled "Check Sheet on Papers Accompanying Employee," which listed several documents he was required to have while traveling and which he was to deliver to the manager at the jobsite. Also on said February 25th, in New York City, he signed a "Memorandum of Agreement," which was identical with the "Memorandum of Agreement" (Exhibit H), which he had signed on January 17th in Oklahoma and mailed to Bechtel at San Francisco. This document states:

"To: Bechtel International Corporation, . . . San Francisco 11, California You have entered into a written agreement with International Bechtel, Inc., which latter Company is hereinafter referred to as the "Contractor," to engage persons in the United States of America who will render service for the Contractor on construction or other work in Saudi Arabia. . . . I understand that in signing below I am offering to enter into an Employment Agreement with the Contractor to perform services in Saudi Arabia . . . in accordance with the terms and conditions set forth in the attached form of Employment Agreement. . . . I understand that upon this Memorandum of Agreement being signed by me and in writing accepted by you at San Francisco, California, it shall become a binding State of California, United States of America Agreement and that the Workmen's Compensation Insurance provisions of the California Labor Code shall constitute the exclusive remedy for any injury . . . that I may sustain while this Memorandum of Agreement is in force and effect. . . . This Agreement shall not become effective until it is accepted by you and salary shall not commence until the date inserted in said acceptance.

Signature of Applicant."

The last paragraph of that memorandum, which is immediately below the line for signature of the applicant, is as follows:

"The services of the applicant whose signature appears

above are hereby accepted pursuant to the terms and conditions above set forth and it is agreed that the salary shall commence on the 21st day of February, 1948; it is further agreed that subsistence Per Diem shall commence on the 24th day of February, 1948;

> Dated  February 25th,  1948
>
> At San Francisco, California.

BECHTEL INTERNATIONAL CORPORATION

By _____ George M. Wood _____

Read and Accepted:

_____

Signature of Employee."

The three dates appearing in said last paragraph, the word "San Francisco," and the signature "George M. Wood," had been placed thereon by said Wood at San Francisco. While in New York City, on February 25th, Crawford affixed his signature in the two blank spaces, provided for his signature, on said memorandum of agreement.

Mr. Crawford left New York by airplane on February 27th and arrived in Saudi Arabia on February 29th. On said last mentioned date he signed the "Employment Agreement" which was attached to said "Memorandum of Agreement." At that time, the controller for International Bechtel also signed the "Employment Agreement."

The commission found that the contract of employment was entered into in California. The evidence supports that finding. Crawford, while in Oklahoma, signed the Memorandum of Agreement, which was an offer by him to accept employment, and sent it and his employment application to Bechtel at San Francisco. Bechtel acknowledged receipt of those documents. Later, Bechtel asked him by telegram if he was available for assignment and if he had a birth certificate. He replied by telegram in the affirmative. Later, Bechtel, in Houston, sent the "General Instructions for Processing," and many other documents regarding processing, to him. One of the instructions was that no definite departure time would be given until all papers had been received by the *San Francisco* office. Bechtel in San Francisco telegraphed him regarding schedule and transportation for the trip, and told him in that telegram to contact a certain person in New York

who would have "processing documents." One of those documents was the "Memorandum of Agreement," which had been signed by Bechtel in San Francisco. That particular agreement was not the one which Crawford had signed in Oklahoma and sent to Bechtel at San Francisco, but in printed form it was identical with the one he had signed and sent. Crawford, in New York in the presence of a representative of Bechtel, signed that particular agreement. The agreement states that it was understood that upon its being signed by Crawford and in writing accepted by Bechtel at San Francisco it would become a binding California agreement. The agreement shows that it was signed by Bechtel at San Francisco. It also states: "The services of the applicant . . . are hereby accepted. . . ." ██ Of course, the parties could not confer jurisdiction upon the Industrial Accident Commission by their agreement. The provision in the agreement to the effect that the workmen's compensation laws of California should be applicable if Crawford sustained an injury did not give the commission jurisdiction. ██ That provision, however, may be considered in determining whether the parties intended that the contract should be one entered into in California. ██ It was not necessary that the acceptance of Crawford's offer be written upon the same document upon which he made the offer. See *Twining* v. *Thompson*, 68 Cal.App.2d 104, 110 [156 P.2d 29].) ██ The document upon which the offer was accepted was in printed form identical with the document upon which the offer was made. An offer and acceptance under such circumstances may constitute a contract. (See *Twining* v. *Thompson, supra*, p. 110.) It does not appear that Bechtel's acceptance in San Francisco was conditional upon Crawford's signing again in New York. The signature of Crawford, affixed in New York under the words "Read and Accepted," did not mean that he was then accepting an offer by Bechtel to employ him. His offer to became employed by Bechtel had been accepted theretofore in San Francisco. His additional signature under the words "Read and Accepted" pertains to his approval of the dates fixed by Bechtel for commencement of salary and subsistence payments. ██ In order to constitute a contract, the acceptance of an offer must be communicated to the offeror. "If a proposal prescribes any conditions concerning the communication of its acceptance, the proposer is not bound unless they are conformed to; but in other cases any reasonable and usual mode may be adopted." (Civ. Code, § 1582.) Crawford's offer

did not prescribe any condition concerning the communication of its acceptance. ''Consent is deemed to be fully communicated between the parties as soon as the party accepting a proposal has put his acceptance in the course of transmission to the proposer, in conformity to the last section.'' (Civ. Code, § 1583.) ▮ In the present case, after Crawford had sent to Bechtel at San Francisco his offer, his application for employment, his previous employment record, his list of references, reports of medical examinations, and various other documents relative to the proposed employment, Bechtel directed him by telegram to pick up airplane tickets, depart for New York, and see its representative there who would have the ''processing documents'' (which included its acceptance). When the telegram was filed in the telegraph office in San Francisco it constituted in effect a communication of acceptance of Crawford's offer. Also the presentation in New York, by Bechtel's agent, of Bechtel's written acceptance was a communication of the acceptance. Those methods of communicating acceptance, adopted by Bechtel, were reasonable and usual modes of communication. The case of *Commercial Cas. Ins. Co. v. Industrial Acc. Com., supra,* 110 Cal.App.2d 83, is similar to the present case. Bechtel also was the employer therein and the employee was a resident of Georgia, who sustained a disability while performing services in Arabia. The ''Memorandum of Agreement'' therein was the same printed form as the one involved here. The factual situation therein, with reference to jurisdiction, is practically the same as that involved here. A difference is that in that case communication of acceptance was by letter mailed from San Francisco to the applicant in Georgia. That difference, however, is not significant. It was said therein, at page 88, ''The offer and the terms were definite and certain. They were accepted by International's duly authorized agent and the contract then was complete. On its return to Atlanta Porter signed 'Read and Accepted'—'Signature of Employee.' This fact does not change the situation as the employer's acceptance at San Francisco was not conditional on Porter's again signing. This signature merely confirmed Porter's understanding of the date fixed for the commencement of his salary, even though it was contemplated that the formal Employment Agreement was to be later executed in Arabia.'' The discussions therein relative to the question of jurisdiction are applicable here. The commission had jurisdiction to make the award herein.

▮ Petitioners also contend that the commission's find-

ing that the injury was compensable is not supported by the evidence. The finding was that Mr. Crawford "sustained injury arising out of and occurring in the course of his employment consisting of aggravation of a pre-existing coronary artery disease as a result of arduous living conditions during the period February 29, 1948 to and including June 5, 1949." Petitioners argue that the heart condition occurred irrespective of, and unrelated to, the simple non-arduous duties of his clerical job. The referee's report states: "From this record it would appear that although applicant did not have the exertion in his work that we usually connect with the bringing on of an anginal syndrome, that the other working conditions including the heat, inferior food which in turn caused bloody diarrhea, were sufficient to aggravate the existent heart condition."

It was in October, 1948, after applicant had been in Arabia about eight months, that he, for the first time, noticed anything wrong with his physical condition. He could not eat. He had gas on his stomach and a form of dysentery. He was confined to his living quarters about five days. About two months later, he had a similar attack which lasted about three days; he had a more severe attack in May, 1949, which lasted about three weeks. On June 7, 1949, he left Arabia and returned to Oklahoma. While he was in Arabia, the temperature in the shade was as follows: in May, 110 to 118 degrees; in October, 105 to 110 degrees; in December, about 34 degrees. During a few days in September and March, when it rained, the atmospheric condition was very humid. Most of their food was sent from the United States. Sometimes the shipments were delayed about six weeks on account of the Palestine war. Sometimes when the food arrived, some of it was discarded because it had deteriorated. Sometimes rats chewed the quarters of beef which were kept in underground compartments. Ferrets were brought in to kill the rats. The company cautioned the employees to not eat outside the mess halls. It is not disputed that applicant had arteriosclerosis before he was employed by petitioners. Dr. Goen of Tulsa, Oklahoma, who examined applicant in July, 1949, reported that his diagnosis of applicant's condition "is angina pectoris due to coronary artery sclerosis." He also reported that "It is highly inadvisable for you to attempt to return to Arabia or other overseas jobs because of the climate, heat and arduous living conditions. These

factors undoubtedly have contributed toward your present illness.'' Dr. Rosenburg of Beverly Hills, California, reported that the most likely diagnosis would seem to be an anginal syndrome secondary to coronary artery disease; that he does not feel that applicant's service overseas caused him to develop coronary artery disease; that once this condition does exist, however, strain on the heart, such as exertion, excitement, emotion, overeating, may cause the development of anginal pain which would not have occurred if the exertion had not occurred. The evidence was sufficient to support the commission's said finding that the injury was compensable.

The award is affirmed.

SHINN, P. J., and VALLÉE, J.—We concur in the foregoing opinion and judgment. We feel that we are bound by the decision of the Supreme Court in *Quong Ham Wah Co.* v. *Industrial Acc. Com.*, 184 Cal. 26 [192 P. 1021, 12 A.L.R. 1190], holding invalid the requirement for California residence of an employee injured without the territorial limits of the state. In view of the criticism that opinion has received (see 12 A.L.R. 1207; *Tedars* v. *Savannah River Veneer Co.*, 202 S.C. 363 [25 S.E.2d 235, 147 A.L.R. 914]; *Liggett & Myers Tobacco Co.* v. *Goslin*, 163 Md. 74 [160 A. 804, 807]), and the further fact that for more than 30 years after the Quong Ham Wah decision the Legislature has retained the residential requirement, it seems to us that the point should be reexamined by the Supreme Court or the requirement should be deleted from the law by legislative action.

A petition for a rehearing was denied April 14, 1953, and petitioners' application for a hearing by the Supreme Court was denied May 21, 1953.