**Andre POLANSKI and Margaret Polanski, Plaintiffs,**

v.

**KLM ROYAL DUTCH AIRLINES, Northwest Airlines, Inc. and Does 1 to 100, Defendants.**

**No. 04CV2521BEN(AJB).**

United States District Court, S.D. California.

July 7, 2005.

Shivani Bommakanty, Quade and Associates, San Diego, CA, for Plaintiffs.

Jennifer J. Johnston, Condon and Forsyth, Los Angeles, CA, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT KLM'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(1) [Docket No. 22]

BENITEZ, District Judge.

This is a personal injury lawsuit claiming jurisdiction under 28 U.S.C. § 1332 and pursuant to a treaty of the United States under 28 U.S.C. § 1331. Defendant KLM Royal Dutch Airlines moves to dismiss this Complaint for lack of subject matter jurisdiction. The Court concludes that it has federal question jurisdiction over claim one for Treaty Liability under 28 U.S.C. § 1331, pursuant to the Warsaw Convention, and the Motion to Dismiss is denied as to claim one. The Court also holds that the Warsaw Convention provides Plaintiffs with their only potential recovery, and dismisses claims two through eight of Plaintiffs' Complaint.

## I.

### BACKGROUND

Plaintiff Andre Polanski has sued KLM Royal Dutch Airlines ("KLM"), which is domiciled and maintains its principal place of business in The Netherlands, and Northwest Airlines ("Northwest"), which is organized and exists under the laws of Delaware, with its principal place of business in Minnesota, for Treaty Liability; Negligence; Willful Misconduct; Breach of Contract; Intentional Infliction of Emotional Distress; Negligent Infliction of Emotional Distress; and Strict Liability. Plaintiff Margaret Polanski has sued KLM and Northwest for Loss of Consortium. Andre Polanski asserts that the treaty liability claim is pursuant to the Montreal Convention of 1999, which is similar to the Warsaw Convention of 1929. Both treaties govern international air carriage between signatories to the treaty.

Andre Polanski alleges that he purchased a ticket from his home in Escondido, California, for a KLM flight from Los Angeles, California, to Warsaw, Poland, with a layover in Amsterdam, Netherlands.[1] The ticket was allegedly issued by Northwest on October 29, 2003, and Andre

---

1. The facts in this paragraph are taken from the Complaint, paragraphs 10 through 26.

Polanski boarded KLM flight KL0602 on October 30, 2003.[2] Approximately 15 minutes after take-off, Andre Polanski began to feel excruciating pain in his abdomen. He claims that he was made to remain lying down in a baggage compartment area for the entire flight and administered an injectable substance for pain. Andre Polanski believes that the plane should have landed sometime during the four to six hours that it was traveling over the continental United States, so that he could have received emergency medical care within a reasonable period of time. Instead, Andre Polanski was aboard a plane in severe pain for approximately twelve hours, until the plane arrived in Amsterdam, Netherlands, with an ambulance waiting for him. Andre Polanski underwent emergency surgery in Amsterdam, Netherlands, on October 31, 2003, and was diagnosed with a perforated duodenal ulcer. Andre Polanski underwent additional surgery on November 8, 2003, which allegedly was necessary due to complications arising from the delay in treatment, and continues to need medical care stemming from the delayed treatment of his perforated duodenal ulcer.

This motion was brought by defendant KLM and seeks dismissal of the Complaint for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). Specifically, KLM urges that Plaintiffs' claims are: (1) exclusively governed by the Warsaw Convention and that the Montreal Convention is inapplicable; (2) Article 28(1) of the Warsaw Convention establishes four places where an action subject to the Convention can be brought; and (3) the United States is not one of the four places authorized by

Article 28(1) of the Warsaw Convention under the facts of this case.

Having now reviewed the pleadings, declarations, record, and applicable law, the Court finds that Plaintiffs' allegations adequately state a cause of action under the Warsaw Convention. Any further argument as to disputed facts must await a summary judgment motion or trial.

## II.

### DISCUSSION

### A. The Warsaw Convention Exclusively Governs Plaintiffs' Claims Against KLM

Plaintiffs' Complaint alleges that the first cause of action is governed by the Montreal Convention,[3] a revised version of the Warsaw Convention.[4] However, the Montreal Convention did not enter into force until November 4, 2003, and Andre Polanski's injury occurred on or about October 30, 2003. Thus, the Warsaw Convention provides Plaintiffs with their exclusive means of recovery.

The Warsaw Convention is a multilateral treaty that was drafted in 1929 and is adhered to by most countries with international air transportation routes, including the United States, since 1934. *See, In re Aircrash in Bali, Indonesia on April 22, 1974,* 684 F.2d 1301, 1304 (9th Cir.1982); *see also, In re Mexico City Aircrash of October 31, 1979,* 708 F.2d 400, 409 (9th Cir.1983); *see also, El Al Israel Airlines, Ltd. v. Tseng,* 525 U.S. 155, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999). Poland has been

---

**2.** Northwest and KLM are "alliance partners." *See Orova v. Northwest Airlines Inc.,* 2005 WL 281197, *1 n. 2 (E.D.Pa.2005).

**3.** Convention for the Unification of Certain Rules Relating to International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106–45, *reprinted at* 1999 WL 33292734.

**4.** Convention for the Unification of Certain Rules Relating to International Transportation by Air, October 12, 1929, 49 Stat. 3000, T.S. No. 876, 137 L.N.T.S. 11, *reprinted at* 49 U.S.C § 40105 note.

bound by the Warsaw Convention since 1933. *See, In re Air Crash Disaster at Warsaw, Poland, on March 14, 1980,* 535 F.Supp. 833, 835 (E.D.N.Y.1982); *see also* International Civil Aviation Organization, Treaty Collection, Contracting Parties to the Warsaw Convention and the Hague Protocol, *at* http://www.icao.int /cgi/goto_m. pl?/icao/en/leb/ treaty.htm.

In 1955, the Warsaw Convention was modified by the international agreement referred to as the Hague Protocol. Poland ratified the Hague Protocol, but the United States did not. However, on September 28, 1998, the United States ratified a later amending treaty, Montreal Protocol No. 4, which became effective as to the United States on March 4, 1999. *G.D. Searle & Co. v. Federal Express Corp.,* 248 F.Supp.2d 905, 907 (N.D.Cal.2003). By doing so, the United States acceded to the Warsaw Convention as amended by the Hague Protocol. *Id.* at 908; *Motorola, Inc. v. Federal Express Corp.,* 308 F.3d 995, 999 n. 6 (9th Cir.2002). Consequently, the United States and Poland have been in treaty relations with respect to the Warsaw Convention, as amended by the Hague Protocol,[5] since March 4, 1999.

Any damages from Andre Polanski's alleged personal injury that occurred on or about October 30, 2003, are potentially recoverable under the Warsaw Convention as an "accident."

> The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the

operations of embarking or disembarking.

Warsaw Convention, Article 17.

■ "Accident" is defined as "an unexpected or unusual event or happening that is external to the passenger." *Air France v. Saks,* 470 U.S. 392, 405, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985). However, "[a]ny injury is the product of a chain of causes, and we require only that the passenger be able to prove that some link in the chain was an unusual or unexpected event external to the passenger." *Id.* at 406, 105 S.Ct. 1338. Here, the unusual or unexpected event external to the passenger, if proven, was the unreasonable delay before Andre Polanski received necessary emergency medical care. Furthermore, the Warsaw Convention applies to claims arising from intentional misconduct. *See,* Warsaw Convention, Article 25; *see also, Carey v. United Airlines,* 255 F.3d 1044, 1050 (9th Cir.2001) ("[C]ourts have consistently understood that claims against international air carriers that allege 'willful misconduct' can be brought under the Warsaw Convention[.]"). Andre Polanski has alleged willfulness and reckless disregard in paragraph 43 of his Complaint, within the Treaty Liability cause of action.

One the other hand, the Montreal Convention did not enter into force until November 4, 2003, and provides no means of recovery for Andre Polanski's alleged injuries. According to Article 53(6) of the Montreal Convention, it entered into force sixty days after thirty States deposited their instruments of ratification, acceptance, approval, or accession with the International Civil Aviation Organization, as the depositary of the treaty. The Montreal Convention was not ratified by 30 nations until September 5, 2003, when the

---

**5.** Protocol to Amend the Convention for Unification of Certain Rules Relating to International Carriage by Air, S. Treaty Doc. No. 107–14, *reprinted at* 1955 WL 45606.

United States deposited with the International Civil Aviation Organization its instrument of ratification. *See, Ehrlich v. American Airlines, Inc.*, 360 F.3d 366, 372 (2d Cir.2004). In accordance with Article 53(6), the Montreal Convention therefore entered into force sixty days later on November 4, 2003. *Id; see also*, Media Note, United States Department of State, Entry Into Force of the 1999 Montreal Convention (Nov. 4, 2003), *at* http://www.state.gov/r/pa/prs/ps/2003/25920.htm.

The Montreal Convention only applies to "international carriage of persons, baggage or cargo" that "originates in the territory of one of the States Party to the Convention and terminates in that of another." Montreal Convention, Article 1. Poland has never deposited an instrument of ratification, acceptance, approval, or accession to the Montreal Convention. *See*, International Civil Aviation Organization, Treaty Collection, Contracting Parties to the Montreal Convention, *at* http://www.icao.int/cgi/goto_m.pl?/icao/en/leb/treaty.htm (showing that the Montreal Convention entered into force on November 4, 2003, and is not in force in Poland). Therefore, the Montreal Convention could not apply to the facts of this case even if the alleged events occurred after November 4, 2003.

Plaintiffs urge that the Vienna Convention [6] makes the Montreal Convention applicable to this case. The Court finds that it does not. As the Plaintiffs concede, neither Poland nor the United States have ratified the Vienna Convention. Furthermore, the Vienna Convention itself does not clearly support Plaintiffs' argument.

> Unless a different intention appears from the treaty or is otherwise established, its provisions do not bind a party in relation to any act or fact which took place or any situation which ceased to exist before the date of the entry into force of the treaty with respect to that party.

Vienna Convention, Article 28.

■ Treaties generally do not apply retroactively. *See, Ehrlich*, 360 F.3d at 373 n. 6 ("We have reviewed the Montreal Convention as well as its history and nothing therein indicates that either the parties to the Montreal Convention or Congress intended the Montreal Convention to apply retroactively."); *see also, Chubb & Son v. Asiana Airlines*, 214 F.3d 301, 307 n. 4 (2d Cir.2000) (where the actions giving rise to a lawsuit took place in 1995, the amendment to the Warsaw Convention, known as the Montreal Protocol No. 4, did not affect the case despite the Senate's subsequent ratification of the protocol on September 28, 1998). Therefore, the Warsaw Convention, not the Montreal Convention, applies to this case.

The Warsaw Convention provides the exclusive remedy for Plaintiffs, according to its own terms and as interpreted by the Supreme Court. Warsaw Convention, Article 24; *Tseng* 525 U.S. at 161, 119 S.Ct. 662 ("[R]ecovery for a personal injury suffered 'on board [an] aircraft or in the course of any of the operations of embarking or disembarking,' if not allowed under the Convention, is not available at all."). Article 17 provides:

> The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the

---

6. Vienna Convention on the Law of Treaties 1980, *available at* http://www.un.org/law/ilc/texts/treaties.htm.

operations of embarking or disembarking.

Warsaw Convention, Article 17.

Article 24(2) provides in relevant part: "In cases covered by article 17 the provisions of the preceding paragraph shall also apply...." Warsaw Convention, Article 24(2). The preceding paragraph, Article 24(1), provides that "... any action for damages, however founded, can only be brought subject to the conditions and limits set out in this convention." Warsaw Convention, Article 24(1). Plaintiffs' other claims under California law, therefore, "...would undermine the uniform regulation of international air carrier liability that the Warsaw Convention was designed to foster." *Tseng,* 525 U.S. at 161, 119 S.Ct. 662. The Plaintiffs' exclusive potential remedy in this case is provided by the Warsaw Convention. Therefore, Defendant KLM's Motion to Dismiss is granted as to Plaintiffs' state law causes of action.

The Warsaw Convention provides four places where a plaintiff can bring an action governed by the Warsaw Convention. Those places are: (1) the domicile of the carrier; (2) the carrier's principal place of business; (3) the carrier's place of business through which the contract has been made; or (4) the place of destination. Warsaw Convention, Article 28(1); *Klos v. Polskie Linie Lotnicze,* 133 F.3d 164, 167 (2nd Cir.1997). The Defendants claim that the only permissible places to bring this case are Poland and the Netherlands, whereas Plaintiffs claim that the United States is also a proper jurisdiction. KLM asserts, and Plaintiffs do not dispute, that The Netherlands would be an appropriate place for Plaintiffs to file this action, because KLM is domiciled and maintains its principal place of business in The Netherlands. KLM further asserts, and Plaintiffs do not dispute, that Poland would be an appropriate place for Plaintiffs to file this action, because the final place of destination was Poland. The dispute is over the third provision of Article 28(1) of the Warsaw Convention, "the carrier's place of business through which the contract has been made," which Plaintiffs claim is the United States and KLM claims is Poland. This Court finds that KLM's place of business through which the contract was made was in the United States, as explained below, and therefore jurisdiction over the first claim for treaty liability in this case is proper.

B. *Standard of Review for Motions to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1)*

Attacks on jurisdiction under Rule 12(b)(1) can be either facial, confining the inquiry to allegations in the complaint, or factual, permitting the court to look beyond the complaint. *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir.2000). For facial attacks, the allegations in the complaint are taken as true. *See, Whisnant v. U.S.,* 400 F.3d 1177, 1179 (9th Cir.2005); *Bollard v. California Province of the Society of Jesus,* 196 F.3d 940, 944 –945 (9th Cir. 1999); *Orsay v. U.S. Dept. of Justice,* 289 F.3d 1125, 1127 (9th Cir.2002). When the motion challenges the jurisdictional facts presented in the complaint the court may consider evidence properly before it, and the party opposing the motion has the burden of establishing subject matter jurisdiction. *See, Savage v. Glendale Union High School,* 343 F.3d 1036, 1040 (9th Cir. 2003); *Association of American Medical Colleges v. U.S.,* 217 F.3d 770, 778 (9th Cir.2000); *Reynolds v. Army and Air Force Exchange Service,* 846 F.2d 746, 747 (Fed.Cir.1988). Because here the motion attacks facts relevant to the determination of whether there is subject matter jurisdiction, the declarations submitted by the parties have been reviewed by the Court.

Here the Warsaw Convention supplies Plaintiffs with their only avenue for sub-

stantive relief within the United States. Because a finding of no subject matter jurisdiction would result in Plaintiffs being unable to prosecute their claim in any federal or state court anywhere within the United States, genuinely disputed factual matters, must, at this stage, be weighed in Plaintiffs' favor. *See, Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039—1040 (9th Cir.2004) ("When a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiffs' substantive claim for relief, a motion to dismiss for lack of subject matter jurisdiction rather than for failure to state a claim is proper only when the allegations of the complaint are frivolous.") (internal quotation omitted).

## C. KLM's Place of Business Through Which the Contract was Made is the United States

■ Andre Polanski declares that he is a United States citizen and a resident of Escondido, California. Andre Polanski Declaration ¶ 1. He declares that he reserved the KLM ticket from his home computer in Escondido, California, and that the ticket was issued by Northwest at the Los Angeles airport. Andre Polanski Declaration ¶ 6–11. Whether Andre Polanski merely reserved the ticket through the KLM website from his home computer in Escondido, California, or was actually issued it, as insisted by KLM, is a techni-

cality that need not be resolved at this time. Karin Plug Declaration ¶ 8 and 9. The Court notes that Andre Polanski was issued a receipt for $28.24 in U.S. dollars, for the taxes paid on the ticket, which was otherwise acquired through redemption of frequent flyer miles. This receipt appears to have been printed on Northwest ticketing stock, and Andre Polanski claims he received the receipt from Northwest. Andre Polanski Declaration ¶ 11 and Elizabeth Allemann Declaration Exhibit 1.

Even if Andre Polanski was actually issued an electronic ticket to his home in Escondido, California, through KLM's website, the Court is not fully convinced that the ticket was "issued" in Poland, as urged by KLM. Karin Plug Declaration ¶ 9 and Karin Plug Reply Declaration ¶ 17. The Court finds that an electronic ticket is normally issued where it is purchased. KLM does not challenge Andre Polanski's contention that he was physically present in Escondido, California, when he either reserved or was issued his ticket at his home computer. KLM insists that because Andre Polanski has a residence in Poland registered with his KLM frequent flyer program that therefore the electronic ticket was issued in Poland. Karin Plug Reply Declaration ¶ 4–12.[7]

Andre Polanski declares that his frequent flyer program was previously with

---

**7.** Plaintiffs' objections to portions of paragraphs 4, 5, 6, and 8 of Karin Plug's Reply Declaration for lack of foundation, hearsay, inadmissible lay opinion, and legal conclusion are overruled. Under Fed.R.Evid. 602 a witness must have personal knowledge. In other words, the witness must have actually perceived or observed that which she testifies to. *Latman v. Burdette*, 366 F.3d 774, 787 (9th Cir.2004). Because Karin Plug is employed in the Customer Relations Department at KLM and declares that she has personal knowledge and undertook an investigation, she has laid a proper foundation. The declaration does not fit the definition of hearsay

under Fed.R.Evid. 801(c), because it is not a statement by another offered to prove the truth of the matter asserted. Lay opinion is admissible under Fed.R.Evid. 701 if it is rationally based on the perception of the witness, helpful, and not based on scientific or technical knowledge. Because Karin Plug is employed in the Customer Relations Department at KLM and declares that she has personal knowledge and undertook an investigation, her lay opinion is admissible. A finding that evidence is admissible "does not limit the right of a party to introduce before the jury evidence relevant to weight or credibility." Fed.R.Evid. 104(e).

Northwest, and that it was switched to KLM after they formed an alliance partnership. Andre Polanski Declaration ¶ 3 and 4. Andre Polanski's declaration implies that the switch was done without his knowledge. "I believe NORTHWEST transferred my frequent flyer miles and information to KLM because I also have a residence in Poland . . . ." Andre Polanski Declaration ¶ 5. KLM states that if Andre Polanski's frequent flyer miles were transferred from Northwest to KLM it would have been done only with his express written consent. Christa Silver Declaration ¶ 7.[8] However, KLM has not indicated whether they are in possession of or aware of any written consent to such a transfer of frequent flyer miles, and they do not deny that this switch occurred.

KLM also states that its frequent flyer program which was used by Andre Polanski could only be used if he had first indicated on the website that he was departing from outside the United States, and that if he indicated that he was departing from inside the United States he would be rerouted to Northwest, where he would be unable to use his frequent flyer miles. Karin Plug Reply Declaration ¶ 11–12. KLM does not dispute that Andre Polanski did depart from the United States, only two days after visiting KLM's website where he redeemed his frequent flyer miles and reserved or was issued his ticket. Although KLM places much im-

portance on the alleged need to first indicate on their website a departure from Europe in order to access the frequent flyer program which was used by Andre Polanski [Karin Plug Reply Declaration ¶ 6–12], the Court finds that this issue is not dispositive. Rather, it is where the contract was made that is decisive.

To this end the Court looks to determine whether KLM had a place of business in the United States through which the contract was made, pursuant to the third provision of the Warsaw Convention, Article 28(1). Although KLM is domiciled and maintains its principal place of business in The Netherlands, it was registered as a foreign corporation in the State of Tennessee at the time of Andre Polanski's injury. Elizabeth Allemann Declaration Exhibit 2. Furthermore, as an alliance partner with Northwest, KLM essentially has a place of business in the United States through which it can make contracts. *See Orova v. Northwest Airlines Inc.*, 2005 WL 281197, *1 n. 2 (E.D.Pa.2005). Also, KLM admits that Northwest issues KLM tickets to United States residents, and refers to Northwest as KLM's "airline partner." Karin Plug Reply Declaration ¶ 11. Therefore, anywhere Northwest does business is a place of business in the United States through which KLM can make contracts. Finally, the Warsaw Convention was drafted in 1929, at a time long before

**8.** Plaintiffs' objections to paragraph 7 of Christa Silver's Declaration for lack of foundation, hearsay, and inadmissible lay opinion are overruled. Under Fed.R.Evid. 602 a witness must have personal knowledge. In other words, the witness must have actually perceived or observed that which she testifies to. *Latman v. Burdette*, 366 F.3d 774, 787 (9th Cir.2004). Because Christa Silver is employed as an insurance analyst at Northwest and declares that she has personal knowledge and undertook an investigation, she has laid a proper foundation. The declaration does not fit the definition of hearsay under Fed.R.Evid.

801(c), because it is not a statement by another offered to prove the truth of the matter asserted. Lay opinion is admissible under Fed.R.Evid. 701 if it is rationally based on the perception of the witness, helpful, and not based on scientific or technical knowledge. Because Christa Silver is employed as an insurance analyst at Northwest and declares that she has personal knowledge and undertook an investigation, her lay opinion is admissible. A finding that evidence is admissible "does not limit the right of a party to introduce before the jury evidence relevant to weight or credibility." Fed.R.Evid. 104(e).

electronic tickets, when virtually all airline tickets were purchased in person between the parties to the contract. It was also much less common when the Warsaw Convention was drafted for potential passengers to purchase tickets for air transportation on one airline at the ticket office of another airline that was not actually performing the transportation. *Eck v. United Arab Airlines, Inc.*, 360 F.2d 804, 813 (2d Cir.1966).

The *Eck* court held that a United States citizen passenger could maintain a lawsuit against a United Arab Republic airline in the United States under the Warsaw Convention's third provision of Article 28(1) when the passenger had purchased the ticket in the United States through the office of another foreign airline, which confirmed the flight directly with the defendant airline's office in Egypt, but the defendant airline maintained offices in the United States. *Eck*, 360 F.2d 804. The *Eck* court stated: "there is no indication in the language of this provision or in the relevant legislative history that the framers intended the scope of this provision to vary depending on the ticketing and booking practices of international air carriers." *Id.* at 813–814. The *Eck* court held that "... the framers ... would have wished that an airline that had a place of business in the territory of a High Contracting Party and permitted its tickets to be sold in that country be subject to suit in that country's courts." *Id.* at 814.

 Despite KLM's insistence that the contract was made in Poland or The Netherlands, the Court finds that the contract was made in the United States. "A contract is 'made' in the place where the last act was done that was essential to a meeting of the minds of the parties." *Consul Ltd. v. Solide Enterprises, Inc.*, 802 F.2d 1143, 1147 (9th Cir.1986). "A contract is made at the place where the offer is accepted. The place of the con-

tract is the place at which the last act was done by either of the parties essential to a meeting of the minds." *Commercial Cas. Ins. Co. of Newark, N.J. v. Industrial Acc. Commission*, 110 Cal.App.2d 83, 90, 242 P.2d 13 (1952) (internal citations omitted). "...[T]he contract is created at the place where the acceptor speaks or otherwise completes his manifestation of assent." Restatement, Second, Contracts § 64(c). Andre Polanski accepted KLM's offer and performed the final act of redeeming his frequent flyer miles and paying $28.24 in taxes for the flight, either at his home in Escondido, California, or at the Los Angeles, California, airport. Therefore, the contract was made in California.

To sum up, this Court holds that the third provision of Article 28(1) of the Warsaw Convention provides jurisdiction over Plaintiffs' Treaty Liability cause of action. In other words, KLM has a place of business in the United States through which the contract with Andre Polanski was made.

### III.

### CONCLUSION

The Court holds that the Warsaw Convention provides Plaintiffs with their exclusive potential recovery for the injuries alleged. Therefore, Defendant KLM's Motion to Dismiss is GRANTED as to the state law causes of action, claims two through eight.

Having carefully considered the matter, and for the reasons stated above, the Court DENIES Defendant KLM's Motion to Dismiss Plaintiffs' claim one for Treaty Liability.

IT IS SO ORDERED.