**G.D. SEARLE & CO., Plaintiff,**

v.

**FEDERAL EXPRESS CORPORATION, Union–Transport GMBH, and Expeditors International of Washington, Inc. Defendants.**

**No. C 02–00089 SBA.**

United States District Court, N.D. California.

Jan. 23, 2003.

David T. Maloof and Thomas M. Eagan, Maloof, Browne & Eagan, LLC, Rye, NY, for the G.D. Searle & Co.

Stephen R. Ginger, Sandra L. Igou, Condon & Forsyth, LLP, Los Angeles, CA, for Federal Express Corporation.

Mark Rubin, Hyman, Kaplan, Ganguzza, Spector & Mars, Miami, FL, for Union–Transport GMBH.

### ORDER

ARMSTRONG, District Judge.

This matter comes before the Court on Defendant Federal Express Corporation's Motion for Partial Summary Judgment [Doc. 24] and Defendant Union Transportation GMBH's Motion for Partial Summary Judgment [Doc. 29]. Having read and considered the arguments presented by the parties in the papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing. The Court hereby DENIES Federal Express Corporation's Motion for Partial Summary Judgment and DENIES Union Transportation GMBH's Motion for Partial Summary Judgment.

### I. BACKGROUND

This action arises out of the international transportation of goods by air. Plaintiff G.D. Searle alleges that on or about August 2, 1999, Knoll (now Abbot Laboratories) entrusted a shipment of Verapamil HCL Fine Powder, a powder used in heart medication, to Defendants Federal Express Corporation ("Federal Express") and Union Transportation GMBH ("Union Transport"). In exchange for agreed upon freight charges, Defendants were to transport the cargo, weighing in total 5,420 kg, from Germany to California, for delivery in two to three days. On August 2, 1999, Union Transport issued its own air waybill "as carrier" in Manheim, Germany, and issued an air waybill on behalf of Federal Express "as carrier." Federal Express received the cargo on August 3, 1999, in Frankfurt, Germany. The cargo arrived in San Francisco in two shipments on August 9, 1999 and August 10, 1999. According to Plaintiff, the cargo was damaged in transit, resulting in a total loss. Plaintiff claims damages in an amount up to or exceeding $850,000.

Both Defendants move for partial summary judgment, asserting that their liability is limited by Article 22 of the Warsaw Convention as amended by The Hague Protocol. Specifically, each Defendant argues that its liability should be limited to $50,300. Union Transport additionally moves for summary judgment on the grounds that it never received timely written notice of the claim as required under the Warsaw Convention as amended by The Hague Protocol.

### II. DISCUSSION

#### 1. Standard of Review for Summary Judgment

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when the Court concludes that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, summary judgment is warranted against a party who "fails to make a showing sufficient to establish the existence of an element essential to that par-

ty's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party moving for summary judgment bears the initial burden of demonstrating the "absence of a genuine issue of material fact." *Id.* at 323, 477 U.S. 317, 106 S.Ct. 2548. If the movant meets this burden, the nonmoving party must come forward with specific facts demonstrating a genuine factual issue for trial. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However,

> [A]t summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party: if direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. Put another way, if a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied.

*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630–31 (9th Cir.1987) (citations omitted). Inferences must be drawn in the light most favorable to the nonmoving party. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Matsushita,* 475 U.S. at 587–88, 106 S.Ct. 1348.

### 2. Analysis

#### a. Applicability of the Warsaw Convention as Amended by The Hague Protocol

As a preliminary matter, the Court must determine whether the terms of the original Warsaw Convention govern this action or if the Warsaw Convention, as amended by the Hague Protocol, supplies the proper law for this action. The Warsaw Convention is a multilateral treaty governing the liability of air carriers in international transportation. *El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng,* 525 U.S. 155, 160, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999). Both the United States and Germany are signatories to the original Warsaw Convention. *Trans World Airlines, Inc. v. Franklin Mint Corp.,* 466 U.S. 243, 246, 104 S.Ct. 1776, 80 L.Ed.2d 273 (1984); 2 Shawcross and Beaumont, *Air Law* App. A, p. A18 (4th ed.2001). The original Warsaw Convention was then modified by the international agreement referred to as "The Hague Protocol." *See* Protocol to Amend the Convention for the Unification of Certain Rules Relating to International Carriage by Air signed at Warsaw on 12 October 1929, Sept. 28, 1955, 478 U.N.T.S. 371. Germany ratified The Hague Protocol on October 27, 1960, and it became effective as to Germany on August 1, 1963. 2 Shawcross & Beaumont at App. A, p. A18. The United States did not ratify the Hague Protocol; however, on September 28, 1998, the United States ratified the Montreal Protocol No.4. The Montreal Protocol No. 4 became effective as to the United States on March 4, 1999. The question before the Court is whether, by adopting the Montreal Protocol No. 4, the United States acceded to The Hague Protocol, such that the terms of the Warsaw Convention as amended by The Hague Protocol should govern this matter.

The Ninth Circuit recently noted that "The Hague Protocol did not enter into force for the United States until the Montreal Protocol No. 4 was ratified by the Senate," *Motorola Inc. v. Federal Express Corp.,* 308 F.3d 995, 999 n. 6 (9th Cir.2002), implying that upon ratification of the Montreal Protocol No. 4, the United States became bound by the terms of The Hague

Protocol. The Second Circuit has also stated that the United States "acceded to the Warsaw Convention as amended by the Hague Protocol" upon ratification of Montreal Protocol No. 4. *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423 (2d Cir.2001); *Chubb & Son, Inc. v. Asiana Airlines*, 214 F.3d 301, 307 n. 4 (2d Cir. 2000). Plaintiff submits that the Second Circuit's discussion on this point is simply wrong, as evidenced by President Bush's transmittal to the Senate on July 31, 2002 of The Hague Protocol for advice and consent. S. Treaty Doc. No. 107–14, 1955 WL 45606 (2002). Plaintiff argues that President Bush's transmittal shows that the Executive Branch believes that the U.S. did not approve The Hague Protocol when it ratified the Montreal Protocol No. 4. However, President Bush's transmittal letter explains that ratification of The Hague Protocol would simply dispel any uncertainty as to whether the United States was bound by The Hague Protocol. *Id.* The letter of transmittal notes that the Second Circuit opinion *Chubb & Son, Inc. v. Asiana Airlines*, 214 F.3d 301 (2d Cir.2000), found that the United States had not ratified The Hague Protocol. *Id.* The letter of transmittal also noted that, "[a]lthough the Chubb decision did not address the 1999 entry into force of Montreal Protocol No. 4 for the United States, it focused industry attention on the difficult question of whether the United States, by its adherence to Montreal Protocol No. 4, became a party to The Hague Protocol." [1] *Id.* President Bush further stated that ratification of The Hague Protocol would "provide a clear basis for courts in determining the existence of treaty relations between the United States and foreign countries." *Id.* Therefore, President Bush's recommendation that the Senate give its advice and consent to ratification of The Hague Protocol does not show that the Executive Branch believes the United States is not currently bound by The Hague Protocol. Rather, President Bush's recommendation reflects the Executive Branch's intention to remove any uncertainty as to whether the United States is subject to the terms of The Hague Protocol.

■ A review of the express language of the Montreal Protocol No. 4 indicates that by ratifying the Montreal Protocol No. 4, the United States did in fact express its consent to accede to the Warsaw Convention as amended by the Hague Protocol, Article XVII(2) of the Montreal Protocol No. 4 provides:

> Ratification of this Protocol by any State which is not a party to the Warsaw Convention or by any State which is not a party to the Warsaw Convention as amended at The Hague, 1955, shall have the effect of accession to the Warsaw Convention as amended at The Hague, 1955 and by Protocol No. 4 of Montreal, 1975.

This language supports the position taken by the Second Circuit, as well as the Ninth Circuit, that the United States acceded to the Warsaw Convention as amended by The Hague Protocol when it ratified the Montreal Protocol No. 4. Accordingly, since both Germany and the United States have acceded to both the Warsaw Convention and the Hague Protocol, the Court finds that the terms of the Warsaw Convention as amended by The Hague Protocol govern this action.

### b. Notice of Claim to Union Transport

■ In its Reply brief, Union Transport argues that Plaintiff failed to provide time-

---

**1.** In fact, footnote 4 of the *Chubb* opinion expressly acknowledges that upon ratification of the Montreal Protocol No. 4, the United States acceded to the Warsaw Convention as amended by The Hague Protocol. *Chubb & Son, Inc. v. Asiana Airlines*, 214 F.3d 301, 307 n. 8 (2d Cir.2000).

ly written notice of the claim to Union Transport as required by the Warsaw Convention. Under the Warsaw Convention as amended by The Hague Protocol,[2] the person entitled to delivery "must complain to the carrier forthwith after the discovery of the damage, and, at the latest, within fourteen days from the date of receipt in the case of cargo." The Hague Protocol, Art. XV. In the instant case, Plaintiff received the cargo on August 18, 1999. Although Plaintiff promptly informed Federal Express of its claim, Plaintiff did not send notice to Union Transport of a damage claim until September 23, 1999. Union Transport argues that notice to Federal Express is insufficient to fulfill the notice requirement with respect to Union Transport, since Federal Express and Union Transport each had separate airway bills with Plaintiff. In support of its position, Plaintiff cites *Motorola, Inc. v. MSAS Cargo International, Inc.*, 42 F.Supp.2d 952 (N.D.Cal.1998), where a district court held that timely notice to the first air carrier did not constitute timely notice to the second carrier where separate contracts existed between the parties. *Id.* at 957. Although two separate airway bills were issued in the instant case, this case is distinguishable from *Motorola*, since here the airway bills specifically provide that a written complaint may be made "to the Carrier whose Air Waybill was used, or to the first Carrier or to the last Carrier or to the Carrier who performed the transportation during which the loss, damage or delay took place." Ex. 37, Clause 12.2. In *Hitachi Data Systems Corp. v. United Parcel Service, Inc.* 76 F.3d 276 (9th Cir.1996), the Ninth Circuit reviewed an air waybill with an identical provision and found that, in light of this provision, the Plaintiff could have fulfilled the notice requirement to one defendant by notifying another carrier. *Id.* at 280. Accordingly, the Court finds that by providing timely notice to Federal Express, Plaintiff complied with its obligation to timely notify Union Transport.

### c. Limitation of Liability

Both Federal Express and Union Transport move for partial summary judgment on the ground that the limitation of liability contained in Article 22 of the Warsaw Convention as amended by the Hague Protocol applies to this action. Article 22 of the Hague Protocol states:

> In the carriage of registered baggage and of cargo, the liability of the carrier is limited to a sum of two hundred and fifty francs per kilogramme, unless the passenger or consignor has made, at the time when the package was handed over to the carrier, a special declaration of interest in delivery at destination and has paid a supplemental sum if the case so requires. In that case the carrier will be liable to pay a sum not exceeding the declared sum, unless he proves that the sum is greater than the passenger's or consignor's actual interest in delivery at the destination.

Although the measure of currency referred to in Article 22 is the franc, this measure has been converted in the United States to $20 per kilogram or $9.07 per pound. *Trans World Airlines, Inc. v. Franklin Mint Corp.*, 466 U.S. 243, 104 S.Ct. 1776, 80 L.Ed.2d 273 (1984). Based on this limited liability provision, Defendants submit that the Court should limit their liability to $20 X 2,515 kilograms, the weight of the shipment that Defendants assert was damaged.

---

**2.** Article XV of The Hague Protocol amends Article 26 of the original Warsaw Convention by extending the time for lodging complaints for damage to cargo from seven days to fourteen days from the date of receipt.

■ At the outset, Plaintiff challenges Defendants' assertion that only 2,515 kilograms of the shipment were damaged. Instead Plaintiff argues that the entire shipment of 5,420 kilograms was damaged. Defendants' calculation of the weight of the shipment that was damaged is based solely on the number of cartons that had water damage, crushing, and tears. Plaintiff, however, has provided evidence showing that the driver who went to pick up the shipment took exception to all of the cartons. (Ex. 11, Tr. 22, attached to the Affidavit of Thomas Eagan.) Moreover, Plaintiff has submitted evidence indicating that, of the cartons that showed no external damage, testing on the internal samples revealed that one third of the samples failed to meet the required specifications. (Ex. 14, attached to the Affidavit of Thomas Eagan). Plaintiff has further provided evidence that the product met the required specifications when it left the supplier in Germany. (Ex. 29, attached to the Affidavit of Thomas Eagan). Given the evidence provided by Plaintiff, the Court finds that a triable issue of fact exists as to how much of the shipment was damaged.

■ Moreover, the Court finds that a triable issue of fact exists as to whether Defendants qualify for the limitation of liability contained in The Hague Protocol. Article XIII of The Hague Protocol provides an exception to the limitation on liability found in Article 22 for damage resulting from intentional misconduct or reckless misconduct with knowledge that damage would probably result.[3] Article XIII of The Hague Protocol reads as follows:

> The limits of liability specified in Article 22 shall not apply if it is proved that the damage resulted from an act or omission of the carrier, his servants or agents, done with intent to cause damage or recklessly and with knowledge that damage would probably result; provided that, in the case of such act or omission of a servant or agent, it is also proved that he was acting within the scope of his employment.

In *Piamba Cortes v. American Airlines, Inc.,* 177 F.3d 1272 (11th Cir.1999) the Eleventh Circuit held that the standard "recklessly and with knowledge that damage would probably result" may be met by providing circumstantial evidence that leads to an inference that the actor "must have known" of the risk of harm. *Id.* at 1291. In the instant case, the Court finds that Plaintiff has submitted evidence which could support a finding that the damage to the cartons resulted from acts or omissions by Federal Express, and these acts or omissions were of such a nature that a jury could infer that Federal Express acted recklessly and with knowledge that damage would probably result. The air waybills for the cartons clearly identified the cargo as "Pharmaceutical Dangerous Goods." (Ex. 3, attached to the Affidavit of Thomas Eagan). Plaintiff has provided evidence that Federal Express would not have accepted packages marked as containing dangerous goods if the cartons were wet, wet stained, crushed, or torn,

---

**3.** In the briefs submitted to the Court, the parties have analyzed whether federal common law, German law or California law should govern the interpretation of the term "willful misconduct." However the term "willful misconduct" only appears in Article 25 of the original Warsaw Convention. The Hague Protocol, which the Court finds is the governing document in this case, replaced the term "willful misconduct" with a treaty definition that obviates the need to refer to federal common law or forum law. *See In re Korean Air Lines Disaster of Sept. 1 1983,* 932 F.2d 1475, (D.C.Cir.1991)(stating that The Hague Protocol adopted "a new treaty definition of willful misconduct that supplanted Article 25's reference to forum law").

that dangerous goods are subjected to closer scrutiny by Federal Express, and that under Federal Express' policy, a "Dangerous Goods Specialist" would specifically check the conditions of the cartons and prepare a document regarding his approval of the paperwork and the condition of the shipment. (Ex. 9, Tr. 12–14, 30–31, attached to the Affidavit of Thomas Eagan). Plaintiff has further provided evidence that when the cartons arrived in California, they were wet to the touch, crushed, holed, torn, the contents of the torn cartons were visible, and the cartons had dirt and bird droppings on them. (Ex. 11, Tr. 9, 24–28, attached to the Affidavit of Thomas Eagan). Additionally, the material was on fourteen pallets, instead of the original thirteen pallets when shipped, the pallets were broken, and the shrink wrap was torn. *Id.* Plaintiff has also provided evidence that a heavy thunderstorm took place in Frankfurt during the time that Federal Express was in control of the cartons, making Frankfurt a likely location of the wetting damage. (Ex. 18, attached to the Affidavit of Thomas Eagan). Based on this evidence, the Court finds that a reasonable jury could infer from the evidence that the damage to the cartons resulted from Federal Express' failure to store the packages properly and that Federal Express acted recklessly and with knowledge that damage would probably result. Accordingly, the Court DENTES Federal Express' motion for partial summary judgment.[4]

With respect to Union Transport, the Court finds that Plaintiff has not provided evidence to suggest that a direct act or omission by Union Transport resulted in damage to the cartons. To the contrary,

by providing evidence that Federal Express would not have accepted damaged cartons marked as containing dangerous goods, Plaintiff has impliedly conceded that when Federal Express accepted the cartons from Union Transport, the cartons were in good condition, leading to the inference that the cartons were not damaged during the transportation of the goods by Union Transport.

■  However, according to the limitation of liability provision in the Hague Protocol, if Federal Express were acting as an agent of Union Transport, the actions of Federal Express may be imputed to Union Transport. The limitation of liability provision of The Hague Protocol states that it "shall not apply if it is proved that the damage resulted from an act or omission of *the carrier, his servants or agents . . .* provided that, in the case of such act or omission of a servant or agent, it is also proved that be was acting within the scope of his employment." (Article XIII of The Hague Protocol, emphasis added). Union Transport cites *Insurance Company of North America v. Federal Express,* 189 F.3d 914 (9th Cir.1999) for the proposition that willful and intentional acts of an air carrier's employee cannot be imputed to a carrier for the purpose of finding willful misconduct under the Warsaw Convention. However, in that case, the Ninth Circuit refused to impute the misconduct of the employee to the employer because the employee's conduct, involving a theft, was "a substantial deviation from the employee's duties and served only the personal purposes of individual gain at the expense of the employer." *Id.* at 922–923. The Ninth Circuit explicitly

---

4. Plaintiff additionally argues that Federal Express is not entitled to the limitation of liability because its airway bill does not comply with Article 8 of the Warsaw Convention. However, The Hague Protocol deleted and

replaced Article 8 of the Warsaw Convention with Article VI of The Hague Protocol. The Court finds that Federal Express' airway bill complies with Article VI of The Hague Protocol.

distinguished a previous case, *Koirala v. Thai Airways,* 126 F.3d 1205 (9th Cir. 1997), in which the Court held that the willful misconduct of a flight crew could be imputed to their employer, on the grounds that the willful misconduct in *Koirala* occurred as the employees "performed their functions *as the flight crew* recklessly." *Id.* at 922 (emphasis in original). The instant case is more akin to *Koirala,* since the alleged acts or omissions of Federal Express occurred as Federal Express performed its functions as an air carrier. Since the alleged acts or omissions of Federal Express were in the scope of Federal Express' duties as carrier, by the terms of The Hague Protocol, the acts or omissions of Federal Express may be imputed to Union Transport as Union Transport's agent.[5] Accordingly, an issue of fact exists as to whether Union Transport qualifies for the limited liability provision of the Warsaw Convention as amended by The Hague Protocol. Therefore, Union Transport's motion for partial summary judgment is DENIED.

## III. CONCLUSION

For the foregoing reasons, the Court DENIES Federal Express' Motion for Partial Summary Judgment and DENIES Union Transport's Motion for Partial Summary Judgment.

IT IS SO ORDERED.

---

**5.** Union Transport has not argued that Federal Express should not be considered Union Transport's agent under The Hague Protocol. Accordingly, the Court does not address the question of whether Federal Express was Union Transport's agent.