**ROYAL & SUN ALLIANCE INSURANCE, Plaintiff,**

v.

**AMERICAN AIRLINES, INC. and All Freight Co–Ordinators N.V., Defendants.**

**No. 02 Civ.6541 (RWS).**

United States District Court, S.D. New York.

July 23, 2003.

Maloof Browne & Eagan, Rye, NY (Barbara Sheridan, of counsel), for plaintiff.

Mound Cotton Wollan & Greengrass, New York, NY (David W. Kenna, of counsel), for defendant American Airlines, Inc.

Thompkins & Davidson, New York, NY (William C. Shayne, of counsel), for defendant All Freight Coordinators.

## OPINION

SWEET, District Judge.

Plaintiff Royal & Sun Alliance Insurance ("Royal & Sun") moves for partial summary judgment declaring that the unamended Warsaw Convention governs the air cargo shipment at issue in this litigation. The defendant American Airlines, Inc. ("American") has opposed the motion on the grounds that the 1955 Hague Protocol governs. For the reasons set forth below, the motion for partial summary judgment is denied.

### Prior Proceedings

On August, 16, 2002, Royal & Sun commenced this subrogation action against defendants American and All–Freight Coordinators N.V. ("All–Freight") to recover for the non-delivery of four crates of aircraft parts which were scheduled to be shipped from Brussels, Belgium to Tulsa,

Oklahoma in March 2001. On February 21, 2003, Royal & Sun filed a letter motion for partial summary judgment to determine that the Original Warsaw Convention[1] governs the cargo shipment, and hence that American's eighth partial affirmative defense that its liability is limited by the terms of the air waybill and the Hague Protocol must be dismissed. American filed a brief opposing the motion on March 31, 2003. Oral argument was heard on May 21, 2003, and the motion was considered fully submitted at that time.

*Facts*

As befits a motion for summary judgment, the following facts are derived from the parties' Local Rule 56.1 statements and are not disputed.

Five crates of new aircraft parts weighing 374 kilograms were shipped from the manufacturer Asco Industries in Belgium to The Boeing Company's facilities in Tulsa in March 2001. The cargo was originally scheduled to be transported on March 10, 2001 from Brussels to Chicago on American Airlines Flight 89, and then from Chicago to Tulsa on Flight 1701. The waybill which was received showed that the shipment was to be made from Brussels to Tulsa via Chicago. American Airlines' sales agent in Brussels, Aviation Consulting, was initially notified that the cargo weighed approximately 75 kilograms. Because the actual cargo was heavier than Aviation Consulting was expecting, the cargo shipment was rescheduled for one day later and was rerouted through Dallas, Texas instead of Chicago because there was insufficient space to ship the cargo on the initially scheduled flights.

At an unknown time and place during the transit of the cargo from Brussels to Tulsa, four of the five crates were lost or stolen. The total value of the lost crates was $122,730.32.

*The Issue*

Article 22 of the Original Warsaw Convention "limited the liability of air cargo carriers to $20 dollars per kilogram of goods." *Chubb v. Asiana Airlines,* 214 F.3d 301, 306 (2d Cir.2000) (citing Original Warsaw Convention, art. 22, 49 Stat. at 3018). Royal & Sun argues that American cannot avail itself of the limit on liability because it failed to comply with Article 8(c) of the Original Warsaw Convention:

> Article 9 of the Original Warsaw Convention precludes an air carrier from availing itself of the liability limitation in Article 22(2) if "the air waybill does not contain all the particulars set out in article 8(a) to (i), inclusive and (q)." Original Warsaw Convention, *supra,* art. 9, 49 Stat. at 3017. Article 8(c) requires that the air waybill contain "[t]he agreed stopping places" for the shipment. Original Warsaw Convention, *supra,* art 8(c), 49 Stat. at 3016.

*Id.* at 304. The air waybill contained Brussels, Chicago and Tulsa, but the shipment was re-routed through Dallas.[2]

American argues that the Original Warsaw Convention does not apply because the United States adheres to the Hague

---

1. The Convention for the Unification of Certain Rules Relating to International Transportation By Air, Concluded at Warsaw, Poland on October 12, 1929, 30 Stat. 300 (1934), T.S. 876, 137 L.N.T.S. 11, reprinted in 49 U.S.C. § 40105 (note) (1997) (the "Original Warsaw Convention").

2. American contends that Dallas was not an "agreed" stopping place, and hence was not required to include Dallas on the air waybill. Because this issue is not necessary to resolve the motion for partial summary judgment, the Court will not consider it.

Protocol[3] rather than the Original Warsaw Convention. Neither party disputes that Belgium ratified the Hague Protocol, and that the Protocol entered into force for Belgium on November 25, 1963. The Hague Protocol "removed most of the exceptions to limited liability for shippers of goods," including the "agreed stopping places" requirement. *Id.* at 306–07. Since the entire shipment weighed approximately 374 kilograms, American argues that its liability would be limited to $7480.

### Standard of Review

Rule 56(e) of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits ... show that there is no genuine issue as to material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Silver v. City Univ.,* 947 F.2d 1021, 1022 (2d Cir.1991). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." *Rodriguez v. City of New York,* 72 F.3d 1051, 1060–61 (2d Cir. 1995). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct.

1348, 89 L.Ed.2d 538 (1986); *Gibbs–Alfano v. Burton,* 281 F.3d 12, 18 (2d Cir.2002).

### The Hague Protocol Governs the March 2001 Air Cargo Shipment

According to American, when the United States ratified Montreal Protocol No. 4,[4] which amended the Warsaw Convention as amended by the Hague Protocol, the United States acceded to the Hague Protocol. The Court agrees.

The parties do not dispute that the United States signed Montreal Protocol No. 4 on September 25, 1975, ratified it on September 28, 1998, deposited it on December 4, 1998, and that it became effective on March 4, 1999. *See Chubb,* 214 F.3d at 307 n. 4. Royal & Sun contends, however, that the United States did not adopt the Hague Protocol at the same time that it adopted Montreal Protocol No. 4.

By ratifying Montreal Protocol No. 4, the United States has expressly consented to adhere to the Hague Protocol. Article XVII(2) of Montreal Protocol No. 4 states that:

> Ratification of this Protocol by any State which is not a party to the Warsaw Convention as amended at the Hague, 1955, shall have the effect of accession to the Warsaw Convention as amended by the Hague, 1955, and by the Protocol No. 4 of Montreal, 1975.

*See also Chubb,* 214 F.3d at 307 n. 4. The position of the United States was also made clear in President Clinton's Letter of Submittal to the Senate of the Montreal Convention[5] on June 23, 2000, in which the

**3.** The Convention For The Unification Of Certain Rules Relating To International Carriage By Air Signed At Warsaw on 12 October 1929 As Amended By The Protocol Done At The Hague On 28 September 1955, 478 U.N.T.S. 371 (the "Hague Protocol").

**4.** Montreal Protocol No. 4 To Amend The Convention For The Unification of Certain

Rules Relating To International Coverage By Air Signed At Warsaw On 12 October 1929 As Amended By The Protocol Done At The Hague on 28 September 1955 ("Montreal Protocol No. 4").

**5.** The Convention for the Unification of Certain Rules for International Carriage By Air, done at Montreal May 28, 1999 (the "Montre-

President explained the effect of the earlier ratification of Montreal Protocol No. 4:

> Among other things, this Protocol eliminated requirements for paper-based transactions, including the requirement to complete detailed air waybills. In accordance with the provisions of Montreal Protocol No. 4, the United States also became bound by the provisions of the Hague Protocol when it ratified Montreal Protocol No. 4.

S. Treaty Doc 106–45, 1999 WL 33292734 (2000). The Second Circuit has twice recognized that the United States has acceded to the Hague Protocol, as has the Ninth Circuit. *See Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 431 (2d Cir. 2001); *Chubb*, 214 F.3d at 307 n. 4; *Motorola v. Federal Express Corp.*, 308 F.3d 995, 999 n. 6 (9th Cir.2002).

Royal & Sun has cited President George W. Bush's transmittal to the Senate on July 31, 2002 of the Hague Protocol for advice and consent for the proposition that the United States could not have been bound by the Hague Protocol before that date. *See* S. Treaty Doc. No. 107–14, 1955 WL 45606 (2002). The meaning of President Bush's transmittal letter was considered recently by the Northern District of California. *See G.D. Searle & Co. v. Federal Express Corp.*, 248 F.Supp.2d 905 (N.D.Cal.2003). The *Searle* Court held that "President Bush's transmittal letter explains that ratification of The Hague Protocol would simply dispel any uncertainty as to whether the United States was bound by The Hague Protocol." *Id.* at 908 (citing S. Treaty Doc. No. 107–14). The transmittal letter states that ratification of the Hague Protocol would "provide a clear basis for courts in determining the existence of treaty relations between the Unit-

ed States and foreign countries." S. Treaty Doc. No. 107–14. Nowhere in the letter is it indicated that the United States is not bound by the Hague Protocol absent a direct ratification. The reasoning of the *Searle* Court is persuasive, and its holding is adopted.

Royal & Sun has noted that the United States is not on the list at the Polish Embassy as ratifying the Hague Protocol and that therefore the United States is not bound by The Hague Protocol. While ratification of the Hague Protocol would resolve any remaining doubt that the United States intends to be bound by the treaty, actual ratification of the Hague Protocol is not necessary for the United States to be bound by its terms. As shown above, it is sufficient that the United States ratified Montreal Protocol No. 4.

Royal & Sun has also relied upon *Chubb v. Asiana Airlines.* However, the Second Circuit in *Chubb* dealt with the question of whether the Original Warsaw Convention or the Hague Protocol applied in the context where Korea had ratified only the Hague Protocol while the United States, at that time, had ratified only the Original Warsaw Convention. The shipment that was the focus of the dispute in *Chubb* took place on August 10, 1995, *before* the United States had acceded to the Hague Protocol. *Chubb*, 214 F.3d at 303. The Court of Appeals in dicta recognized that the Hague Protocol was in force after March 4, 1999. *Id.* at 307 n. 4. Royal & Sun is similarly mistaken in its reliance on *Fujitsu Ltd v. Federal Express Corp.*, for the Second Circuit recognized in that decision as well "the entry into force of the Hague Protocol in March 1999." 247 F.3d at 434.

al Convention"). The Montreal Convention is a separate agreement from Montreal Protocol No. 4. President Clinton's transmittal of the Montreal Convention does, however, contain pertinent discussion of the effect of the ratification of Montreal Protocol No. 4.

### Conclusion

Because the 1955 Hague Protocol applies to the air cargo shipment at issue in this litigation, Royal & Sun's motion for partial summary judgment is denied.

It is so ordered.